[No. 16349.  *En Banc.*  November 29, 1921.]

ADA HALL, *Respondent,* v. ELMER HALL *et al.,
Appellants.*[1]

FRAUDULENT CONVEYANCES (95, 97)—DEEDS—INTENT OF GRANTOR— WANT OF CONSIDERATION—EVIDENCE—SUFFICIENCY.  A deed by a husband of all his separate property to his brother at a time when his marital relations were strained will, on granting a decree of divorce to the wife, be set aside for the purpose of awarding the wife a portion thereof, though no actual fraud on the part of the grantee is shown, where it appears the property was greatly in excess of any sum that might be due the brother; that any claim of the brother for loans was in fact outlawed; that it does not clearly appear that there was ever more than a constructive delivery of the deed; and that it was not recorded by the grantee until the expiration of a year following its execution, and but one week prior to the commencement of the divorce action (FULLERTON, HOLCOMB, and MACKINTOSH, JJ., dissent).

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered July 29, 1920, upon findings in favor of the plaintiff, in an action for divorce and to set aside a deed, tried to the court. Affirmed.

*W. C. Losey,* for appellants.

*Oscar Cain,* for respondent.

[1] Reported in 201 Pac. 912.

PARKER, C. J.—The plaintiff, Ada Hall, commenced this action in the superior court for Spokane county, seeking a decree divorcing her from her husband, the defendant Elmer Hall, and also seeking a decree setting aside a deed to certain real property, described as certain lots in Spokane county, made by him to his brother, the defendant Oliver Hall, to the end that such disposition of the property may be made in the divorce proceeding, under § 989, Rem. Code (P. C. § 7008), as shall appear just and equitable in the protection of her marital rights. A trial upon the merits resulted in a decree awarding to the plaintiff a divorce as prayed for; awarding to the plaintiff the custody of their minor child, reserving to the defendant Elmer Hall the privilege of visiting the child and having the child visit him during school vacations; setting aside the deed in question; awarding to the plaintiff, of the property described in the deed so set aside, one lot and the dwelling thereon, in which she resides with the child; awarding to the plaintiff judgment against the defendant Elmer Hall in the sum of $450, and the further sum of $150 attorney's fee, which sums are made a lien upon the other lots described in the deed so set aside; and also awarding to the plaintiff the sum of $15 per month to be paid to her by the defendant Elmer Hall for the support and maintenance of their child. From this disposition of the cause, the defendants, by the same attorney, have jointly appealed to this court.

It is first contended in appellants' behalf that the evidence does not warrant the awarding of the divorce and the custody of the child to respondent. This branch of the case does not call for the discussion of any question of law. We deem it sufficient for present purposes to say that the evidence quite convinces us that the trial judge was fully warranted in reaching

the conclusion he did upon these questions. It would be of no benefit to any one to here review the distressing story disclosed by the evidence.

It is further contended that the trial court erred in setting aside the deed in question, to the end that the lots might be disposed of in the interest of respondent as might seem just and equitable in view of her marital rights. Respondent and Elmer Hall were married in January, 1909. We may concede for present purposes that all of the lots described in the deed in question were and remained the separate property of appellant Elmer Hall since prior to his marriage to respondent. He signed and acknowledged the deed in question, purporting to convey the lots—being all of his real property—to his brother, appellant Oliver Hall, on January 10, 1919. He claims to have made this deed in payment of a debt owing by him to his brother Oliver. It seems plain from the evidence that practically all of the balance which he then may have owed his brother Oliver was so long past due as to be clearly outlawed by the statutes of limitation. We may also observe that the deed seems to have been made at a time when the relations between himself and wife were so strained as to strongly suggest an impending separation. The deed was not delivered, if at all, until some time after its execution. The deed was not recorded until January 20, 1920, a year after its signing and acknowledgment and but one week prior to the commencement of this action. The evidence, we think, warrants the conclusion that the total value of the lots was very much greater than any possible balance owing from him to his brother Oliver. While Elmer testifies that he told his brother Oliver, at Colfax, that he was going to deed the property to him, it does not appear from the evidence that his brother

agreed to accept the deed in payment of, or even as security for, any sum owing him. We have no competent evidence of the deed ever actually coming into the possession or control of Oliver, nor as to who caused it to be recorded. Elmer testified in part as follows:

"  . . . when I came back (to Spokane) I executed this deed. He was not here at the time and I left it in escrow for him. I gave it to Mr. Shaefer and Peter Mertz. I left it there with them and told them if anything happened that he would be paid off for what I owed him. The deed was to be delivered to Oliver; when he got back it was to be delivered to him. The deed was put in an envelope and sealed and I gave instructions to them as my attorney and I don't know when it was delivered. I did not deliver it. I directed it to be delivered and he afterwards tried to trade the property off. I was going over to Olympia and if anything happened to me—a railroad wreck or anything—going over there, I left it there for him  . . . I told him the deed was there for him and he said: 'Let it go and we will try to trade the property off.' . . . I don't know what date the deed was finally delivered. . . I don't know how long he had it. I don't think I asked him whether he had the deed or not, because he would never say a word to me or talk with me anything about our troubles."

While Oliver testified at the trial, his testimony did not in the slightest degree refer to the execution or delivery of the deed, but only was to the effect that he was willing to provide and care for his brother and the child to whatever extent their necessities might require. This testimony seems to have been given for the sole purpose of showing that the child would be provided for if awarded to Elmer, its father. Assuming, for argument's sake, that the deed was, in a legal sense, delivered to Oliver—which may well be doubted —it seems to us that the trial judge was warranted in

concluding, as he did, that Elmer Hall executed the deed with intent to deprive his wife of the opportunity of being awarded any relief as against the property described therein, in the event she should be granted a divorce from him. It also appears to us that there was no consideration for the conveyance; that is, there was no consideration to which Oliver ever assented. Viewing this record as a whole, it seems to us that the question of the setting aside of this deed is in fact much more a controversy between Elmer and his wife than between Oliver and Elmer's wife. Indeed, it seems to us that, aside from his formal answer in this case prepared by an attorney who was also Elmer's attorney, Oliver's attitude has been only passive. We are quite convinced that he has not been guilty of any actual fraud or moral wrong; but that does not argue, under these circumstances, that the deed should remain in force as the conveyance it purports to be.

The decree is affirmed.

MAIN, TOLMAN, MITCHELL, and HOVEY, JJ., concur.

BRIDGES, J. (concurring)—I concur in the result of the foregoing opinion, but think the deed should be set aside or annulled for the reason that no delivery had been made. Elmer Hall testified: "I was going over to Olympia and if anything happened to me—a railroad wreck or anything—going over there, I left it for him (Oliver Hall)." This falls far short of showing such a delivery as the law requires.

FULLERTON, J. (dissenting)—I am unable to concur in the foregoing opinion. On the question whether a divorce should be granted, the evidence, to my mind, is by no means conclusive. The evidence shows that, in the battles of words so frequently occurring be-

tween the parties, the respondent was abundantly able to hold her own, and that, in the physical combats, she usually emerged the victor. It is not shown that Elmer Hall was always, or even usually, the instigator of these combats, and if it be the rule, as I conceive it to be, that divorce is a remedy for the innocent, not the guilty, I can see no reason for granting a divorce to either party.

But passing this, there is, in my opinion, even less reason for setting the deed aside. It is shown, without contradiction, that the property conveyed by the deed was the separate property of Elmer Hall. The land itself was acquired by him prior to his marriage with the respondent, and the buildings erected thereon, although erected subsequent to the marriage, were paid for in part by money borrowed from Oliver Hall and in part from a legacy which Elmer received from an uncle. This money was loaned by Oliver to the appellant in 1912, and it seems to be assumed by the majority that this was the total advancement and total of the indebtedness owing by Elmer to Oliver. But this overlooks other parts of the record. The appellant lost an arm at the shoulder in an accident. Seemingly there was difficulty in causing the wound to heal, and Oliver bore the expense of five different surgical operations, with the accompanying costs of hospital fees, nurses' services and medicines, before a cure was effected, no part of which was ever repaid. Moreover, Oliver continuously made advancements to the parties. Indeed, the respondent in her brief says: "It is conceded that, over a period of a good many years prior to the execution of this instrument, the appellant, Elmer Hall, received considerable sums in contribution from his brother, Oliver Hall." It is shown, also, that the sum of one hundred dollars was loaned immediately preceding the execution of the deed, at which

time Elmer told his brother that he would execute a deed of the property in payment of his obligations to him. Elmer testified, also without contradiction, that the respondent knew of and consented to the execution of the deed, saying to him that she wanted Oliver paid off as she "was tired of being supported by him." It seems to me, therefore, that there is no justification for the holding that the deed was executed without consideration, or for a consideration less than the value of the property, or for a consideration barred by the statute of limitations.

Nor do I think there is any justification for the conclusion that there was no delivery of the deed. The quotation made from Elmer's testimony in the majority opinion seems to have been taken from the abstract, and to my mind does not clearly reflect his actual testimony. Reading the testimony from the transcript, it seems to me to warrant the conclusion that the escrow was but a temporary disposition of the deed—a disposition pending Oliver's absence from his home, and that it was to be delivered on his return. Certain it is that Elmer never afterwards had possession of the deed, and the instrument itself bears on its face the endorsement of the recording officer to the effect that it was recorded at the request of Oliver. Delivery is largely a question of intent, and when we have a showing of direction on the part of the grantor to deliver to the grantee, followed by a showing of subsequent possession of the deed by the grantee, there is sufficient evidence of a delivery.

As said by the majority, there is not in the evidence any showing of actual fraud or moral wrong on the part of the appellant Oliver Hall. It is said, however, that there is sufficient evidence to warrant the conclusion that Elmer Hall executed the deed with intent

to deprive his wife of the opportunity to be awarded an interest in the property. The conclusion seems to be founded on the statement, made earlier in the opinion, "that the deed seems to have been made at a time when the relations between himself (Elmer) and wife were so strained as to strongly suggest an impending separation." But I can find nothing in the record showing anything unusual in the parties' relations at that time. There was then, perhaps, bickering and quarreling between them, but, as I read the record, this was the usual rather than the unusual in their marital relation, and that nothing then occurred more than had occurred many times before and afterwards between them. It must be remembered that the parties lived together for a considerable time after the execution of the deed, and I do not find that the respondent in her testimony in support of her action for divorce lays any particular stress on the happenings at the particular time. But conceding that Elmer had a fraudulent intent, the fact does not warrant setting aside the deed. The deed was made for a valuable consideration, a part of which was a present advancement, and fraud in both grantor and grantee must be shown before that result can follow.

I cannot think, therefore, that there is any justification for the decree of the trial court.

HOLCOMB and MACKINTOSH, JJ. (dissenting in part) —We concur with Judge Fullerton as to the nullification of the deed, but agree with the majority that the remainder of the decree should be affirmed.